IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MEGAN MCGILL, et al., | ) CASE NO. 1:24 CV 916 |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) JUDGE DONALD C. NUGENT |
| | ) |
| | ) |
| PRUDENTIAL INSURANCE | ) MEMORANDUM OPINION |
| COMPANY OF AMERICA, et al., | ) AND ORDER |
| | ) |
| Defendants. | ) |

This matter is before the Court on the Motion for Summary Judgment filed by Defendant, Gerald McGill. (Docket #58.) Mr. McGill argues that the claim for declaratory relief filed against him by Plaintiffs, Megan McGill and Shannon McGill, is preempted by ERISA.

I.   **Factual and Procedural Background.**

In January 2024, Plaintiffs' father, Joseph McGill was diagnosed with pancreatic cancer and his health rapidly declined. Joseph was hospitalized in mid-February 2024 and died on March 7, 2024. Plaintiffs learned of Joseph's condition days before his death.

Prior to his death, Joseph McGill was employed by Amazon and, through his employment, obtained two life insurance policies issued by Prudential. While Plaintiffs had been the named beneficiaries on Joseph McGill's life insurance policies, a change in beneficiaries was executed after Joseph became ill.

Plaintiffs allege that during the final months of Joseph McGill's life, Joseph suffered from diminished mental capacity; was heavily medicated to control his pain; and, was incapable of fully understanding his financial affairs. Plaintiffs allege that Gerald McGill, Joseph's brother, exercised undue influence over Joseph during that time and either convinced Joseph to name him as the beneficiary of the life insurance policies or changed the beneficiary of the life insurance policies to himself without Joseph's knowledge and consent. Discovery in this case regarding Joseph's health and mental capacity during the relevant time period – and the nature and extent of Gerald McGill's involvement in the beneficiary change – is ongoing.

On April 5, 2024, Plaintiffs filed their Complaint against Defendants, Prudential Insurance Company of America, Amazon, and Gerald McGill, in the Geauga County, Ohio Court of Common Pleas. On May 23, 2024, Prudential and Amazon filed a Notice of Removal with this Court. Plaintiffs seek a declaration from the Court that the change in the beneficiaries of Joseph McGill's life insurance policies was the result of Gerald McGill's undue influence and a declaration that Plaintiffs are the rightful beneficiaries of the life insurance policies. On May 30, 2025, Prudential filed a Counterclaim against Plaintiffs and a Cross-Claim in Interpleader and Contingent Cross-Claim. (Docket #7.)

On December 5, 2024, Gerald McGill filed his Motion for Summary Judgment, arguing that Plaintiffs' claims are preempted by ERISA. (Docket #58.) On February 24, 2025, Plaintiffs filed a Memorandum in Opposition. (Docket #74.) On May 24, 2025, Gerald McGill filed a Reply Brief. (Docket #81.)

II. **Standard of Review**.

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law." FED. R. CIV. P. 56(a). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. Ohio 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. Mich. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't*

*of Transp.*, 53 F.3d 146, 149 (6th Cir. Ky. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

### III. Discussion.

"Claims touching on the designation of a beneficiary of an ERISA-governed plan fall under ERISA's broad preemptive reach and are consequently governed by federal law. *Tinsley v. GMC*, 227 F.3d 700, 704 (6th Cir. 2000) (citing *Metropolitan Life Ins. Co. v. Marsh*, 119 F.3d, 415, 420 (6th Cir. 1997); *Metropolitan Life Ins. Co. v. Pressly*, 82 F.3d 126, 129 (6th Cir. 1991); *McMillan v. Parrott*, 913 F.3d 310, 311 (6th Cir. 1990)). However, ERISA "does not contain any

provisions regarding regulating the problem of beneficiary designations that are forged, the result of undue influence, or otherwise improperly procured." *Tinsley*, 227 F.3d 700, 704 (6th Cir. 2000). As stated by the Court in *Tinsley*:

> Since Tinsley's claim for the benefits of Williams's life insurance plan is preempted by ERISA, this court must "look to either the statutory language or, finding no answer there, to federal common law which, if not clear, may draw guidance from analogous state law." *McMillan*, 913 F.2d at 311. Since ERISA does not contain any provisions regulating the problem of beneficiary designations that are forged, the result of undue influence, or otherwise improperly procured, it appears that federal common law must apply to Tinsley's claims. Furthermore, because there is no established federal common law in this circuit dealing with forgery and undue influence in the designation of beneficiaries, we look to state-law principles for guidance.

*Id.*

> The Court in *Tinsley* went on to explain as follows:
>
> Undue influence is generally defined as influence that is "sufficient to overpower volition, destroy free agency, and impel the grantor to act against the grantor's inclination and free will." *McPeak v. McPeak*, 233 Mich. App. 483, 593 N.W.2d 180, 187 (Mich. Ct. App.), appeal denied, 605 N.W.2d 318 (Mich. 1999); see also *Bye v. Mattingly*, 975 S.W.2d 451, 457 (Ky. 1998); *Henkle v. Henkle*, 75 Ohio App. 3d 732, 600 N.E.2d 791, 794 (Ohio Ct. App. 1991) ("An individual's influence is undue when it restrains a testator from disposing of property in accordance with the testator's own wishes and judgments and substitutes the wishes or judgments of another. The undue influence must so overpower and subjugate the mind of the testator as to destroy the testator's free agency and make the testator express another's will rather than his or her own." (citation omitted)); *Cannon v. Allen (In re Estate of Depriest)*, 733 S.W.2d 74, 78 (Tenn. Ct. App. 1987). A showing of mere motive or opportunity to exert excessive control over another is not enough to make out a claim of undue influence; rather, the influence must actually be exerted, either prior to or at the time of the execution of the relevant document. See *Bye*, 975 S.W.2d at 457-58; *Kigar v. Michigan Conference Ass'n of Seventh-Day Adventists (In re Estate of Erickson)*, 202 Mich. App. 329, 508 N.W.2d 181, 183 (Mich. Ct. App. 1993); *Henkle*, 600 N.E.2d at 794; *Harper v. Watkins*, 670 S.W.2d 611, 622 (Tenn. Ct. App. 1983).

*Tinsley*, 227 F.3d 700, 705.

Whether an individual has exercised undue influence over another is a highly fact-intensive inquiry and the Sixth Circuit encourages courts to examine several factors, including:

> [t]he physical and mental condition of the benefactor; whether the benefactor was given any disinterested advice with respect to the disputed transaction; the "unnaturalness" of the gift; the beneficiary's role in procuring the benefit and the beneficiary's possession of the document conferring the benefit; coercive or threatening acts on the part of the beneficiary, including efforts to restrict contact between the benefactor and his relatives; control of the benefactor's financial affairs by the beneficiary; and the nature and length of the relationship between the beneficiary and the benefactor.

*Id.* (citations omitted).

"Under the federal common law applicable in the context of insurance, there is a presumption that an insured is mentally competent to change the beneficiary of his policy." *Metropolitan Life Ins. Co. v. McCloskey*, Case No. 1:03 CV 1523, 2005 U.S. Dist. LEXIS 35495, at *10 (N.D. Ohio Dec. 23, 2005)(citing *Rice v. Office of Servicemembers' Group Life Ins.*, 260 F.3d 1240, 1247 (10th Cir. 2001)). However, this presumption of competence may be overcome by a preponderance of the evidence. *Id.* "'To be capable of effecting a valid change of beneficiary a person should have clearness of mind and memory sufficient to know the nature of the property for which he is about to name a beneficiary, the nature of the act which he is about to perform, the names and identities of those who are the natural objects of his bounty; his relationship towards them, and the consequences of his act, uninfluenced by any material delusions.'" *McCloskey*, 2005 U.S. Dist. LEXIS 35495, at *5-6 (quoting *Metropolitan Life Ins. Co. v. Hall*, 9 F. Supp. 2d 560, 564 (D. Md. 1998); see also *Sun Life Assur. Co. v. Tinsley*, Case No. 6:06 CV 10, 2007 U.S. Dist. LEXIS 25172, at *4 (W.D. Va. Apr. 4, 2007) (adopting McCloskey's standard for determining mental capacity and concluding that McCloskey's

statement of law "deserves deference to promote uniformity of federal common law and ease of ERISA plan administration")).

IV. **Conclusion.**

Discovery in this case is not complete and genuine issues of material fact persist regarding Joseph McGill's mental capacity at the time the beneficiaries of his life insurance policies were changed and whether Defendant, Gerald McGill, exercised undue influence over Joseph McGill relative to the change in Joseph McGill's designated beneficiaries. Accordingly, the Motion for Summary Judgment filed by Defendant, Gerald McGill, is DENIED.

Plaintiffs' Motion to Deny or Defer Consideration of Defendants' Motion for Summary Judgment (Docket #63) is hereby DENIED AS MOOT.

Defendant Gerald McGill's Motion for Order Acknowledging Service of Subpoenas to Michelle Wolf and Patricia Morgan and Staying Depositions (Docket #71) is hereby DENIED AS MOOT.

Defendant Gerald McGill's Motion to Withdraw Any Default Admissions (Docket #77) is hereby GRANTED.

The Parties are hereby ORDERED to complete discovery in this case in accordance with the Federal Rules of Civil Procedure and the prior Orders of this Court.

Trial remains set for May 19, 2025 at 8:30 a.m.

IT IS SO ORDERED.

*/s/ Donald C. Nugent*
DONALD C. NUGENT
United States District Judge

DATED: April 10, 2025